This is a delayed appeal from judgments of conviction and sentence entered by the Adams County Common Pleas Court, upon a guilty plea, finding James Phillips, defendant below and appellant herein, guilty of felonious assault, in violation of R.C. 2903.11(A)(1), a second degree felony, with a firearm specification. The following errors are assigned for our review:
FIRST ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED IN ACCEPTING APPELLANT'S GUILTY PLEA BECAUSE THE COURT FAILED PROPERLY TO DETERMINE WHETHER APPELLANT UNDERSTOOD THE NATURE OF THE CHARGE. ACCORDINGLY, THE PLEA WAS NOT KNOWINGLY, INTELLIGENTLY, AND VOLUNTARILY ENTERED. THIS ERROR WAS PREJUDICIAL AND DEPRIVED APPELLANT OF HIS RIGHT TO DUE PROCESS AS GUARANTEED BY THE OHIO AND UNITED STATES CONSTITUTIONS."
SECOND ASSIGNMENT OF ERROR:
 "A TRIAL COURT VIOLATES CRIM. R. 11(C)(2)(a) AND COMMITS PREJUDICIAL ERROR WHERE THE ACCUSED ENTERS THE PLEA BELIEVING HE IS ELIGIBLE FOR SHOCK PROBATION, NOTWITHSTANDING THAT THE ACCUSED WAS SUBJECT TO A MANDATORY TERM OF ACTUAL INCARCERATION."
THIRD ASSIGNMENT OF ERROR:
 "AN ACCUSED IS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED BY THE OHIO AND UNITED STATES CONSTITUTIONS WHERE TRIAL COUNSEL ERRONEOUSLY ADVISES THE ACCUSED HE IS ELIGIBLE FOR SHOCK PROBATION ALTHOUGH HE IS SUBJECT TO A TERM OF ACTUAL INCARCERATION. AS A RESULT, THE ACCUSED'S GUILTY PLEA WAS NOT A KNOWING, INTELLIGENT, AND VOLUNTARY WAIVER OF FUNDAMENTAL CONSTITUTIONAL RIGHTS."
A brief review of the facts pertinent to this appeal is as follows. On January 2, 1994, appellant entered a residence on East 4th Street, in Manchester, Ohio, grabbed Brian Guinn (a minor) by the shirt, placed a 357 revolver to his neck and pulled the trigger.[2] The boy survived this attack but the extent of his physical and/or psychological injuries are unclear. In any event, as a result of that incident, the Adams County Grand Jury returned an indictment charging appellant with one (1) count of attempted murder in violation of R.C. 2923.02 with a firearm specification.
Appellant initially entered a "not guilty" plea to the charge but, later, reached an agreement with the prosecution whereby he would plead guilty to a reduced charge of felonious assault in violation R.C. 2903.11(A)(1) with the same gun specification.[3] A hearing was held on September 21, 1994, at which time the trial court questioned appellant to ascertain: (1) whether he was aware of the substance of these charges, as well as their possible consequences; and (2) the nature and extent of the constitutional and statutory rights that he was waiving. Appellant responded in the affirmative and, after a brief explanation of circumstances, the court accepted his plea. The trial court thereupon found appellant guilty of the reduced charge and its accompanying specification.
On January 31, 1995, the matter came on for sentencing. The trial court imposed a determinate prison sentence of four (4) to fifteen (15) years on the felonious assault conviction. Appellant was also given a three (3) year term of incarceration on the firearm specification to be served prior to, and consecutive with, the sentence for the principle offense. Judgment to that effect was entered on February 15, 1995, but no immediate appeal was taken therefrom.
The following month, however, appellant filed a motion for "shock probation" asserting that he was "genuinely sorry and remorseful" for the crime he perpetrated against Brian Guinn. He went on to state that the restrictions placed on his freedom, as well as the proverbial "slamming of the door behind him," had "shocked [his] conscience into realizing the seriousness of the crime he committed." The trial court summarily overruled his motion five (5) days later.
On July 27, 1995, appellant filed a petition for post conviction relief under R.C. 2953.21 arguing inter alia that he (1) was "not competent to stand trial at the time [he] was convicted," and (2) was the victim of an illegal search. This petition was also overruled in a summary fashion.
Appellant made another attempt at probation on April 17, 1998, by filing a "motion to suspend further execution of sentence." He argued therein that the victim (Brian Guinn) had provoked or "facilitated this offense" himself and that appellant had shot him only because he "was in fear of his life." Appellant continued that while in prison, he had attended school as well as various other programs and had thereby "successfully [r]ehabilitated himself to a very high degree . . ." He concluded that such rehabilitation, as well as the need for paternal support by his six (6) children from various marriages, warranted suspension of sentence and granting of probation. The trial court overruled this motion as well.
On June 12, 1998, appellant filed a motion with this Court pursuant to App.R. 5(A) seeking leave to initiate a delayed appeal from his original 1995 conviction. He also filed an accompanying affidavit which, essentially, set forth that his trial counsel had led him to believe that he would be eligible for "shock probation." Had he known that he "was ineligible for any [such] type of early relief," he would not have agreed to the plea bargain or entered a plea of guilty to the reduced charge of felonious assault. Thus, appellant concluded, he did not knowingly and intelligently waive his rights. This Court entered judgment on September 2, 1998, granting appellant leave to appeal. The matter is now properly before us for review.
 I
Appellant's first assignment of error is directed not at the alleged misrepresentations by his trial counsel but, instead, at a purported failure by the trial court to ensure that he understood both the nature of the charge against him as well as the accompanying specification. Specifically, he cites us to a portion of the transcript taken at the November 21, 1994 change of plea hearing in which the trial court explained to him that R.C. 2903.11(A)(1) proscribes only knowing infliction of "physical harm to another." Appellant correctly points out that this statute actually prohibits the knowing infliction of "serious" physical harm. He argues that by omitting the term "serious" from its explanation, the trial court essentially gave him a definition of "simple assault" under R.C. 2903.13(A) rather than "felonious assault" under R.C. 2903.11(A)(1). Appellant goes on to argue that the court gave too "vague" an explanation for the gun specification and never once told him that the weapon must constitute a "firearm" and be "operable" under R.C. 2923.11(B). He concludes that, without sufficient explanation of these points, his guilty plea was neither knowing nor voluntary and that his conviction must be reversed. We disagree.
Our analysis begins with the proposition that when a defendant enters a plea in a criminal case, the plea must be made knowingly, intelligently and voluntarily. State v. Engle
(1996), 74 Ohio St.3d 525, 527, 660 N.E.2d 450, 451. Failure on any of these points renders enforcement of the plea unconstitutional under both the Ohio and United States Constitutions. Id. citing State v. Kelly (1991), 57 Ohio St.3d 127,129, 566 N.E.2d 658; Boykin v. Alabama (1969),395 U.S. 238, 243. A plea may be deemed involuntary when the accused has such an incomplete understanding of the charge against him that his plea cannot stand as an intelligent admission of guilt.State v. Fletchinger (1977), 51 Ohio App.2d 73, 77,366 N.E.2d 300, 303; Henderson v. Morgan (1976), 426 U.S. 637, 645. These principles are encompassed within the procedural requirements of Crim.R. 11. See State v. Campanaro (Nov. 10, 1998), Highland App. No. 97CA942, unreported. The provisions of Crim.R. 11(C)(2) state, inter alia, as follows:
 "In felony cases, the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally and doing all of the following:
 (a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges . . ." (Emphasis added.)
We agree with appellant that the nature of the felonious assault charge, and its accompanying firearm specification, was not explained with any degree of mathematical precision by the trial court. However, such precision is also not required under this rule. Literal compliance with the provisions of Crim.R. 11 is certainly preferred but it is not an absolute requirement.See State v. Caplinger (1995), 105 Ohio App.3d 567, 572,664 N.E.2d 959, 962. Rather, the trial court's actions will be reviewed for "substantial compliance" with the terms of that rule. State v. Nero (1990), 56 Ohio St.3d 106, 108,564 N.E.2d 474, 476; State v. Johnson (1988), 40 Ohio St.3d 130, 133,532 N.E.2d 1295. "Substantial compliance" means that under the totality of the circumstances, the defendant subjectively understands the implications of his plea and the rights he is waiving. Nero, supra at 108, 564 N.E.2d at 476; State v.Carter (1979), 60 Ohio St.2d 34, 38, 396 N.E.2d 757, 760. In other words, if it appears from the record that the defendant appreciated the effect of his plea and his waiver of rights in spite of the trial court's error, there is still substantial compliance. Nero, supra at 108-109, 564 N.E.2d 476-477. Furthermore, an appellant who challenges his plea on the basis that it was not knowingly and voluntarily entered must show a prejudicial effect. Id. citing State v. Stewart (1977), 51 Ohio St.2d 86, 364 N.E.2d 1163. The test is whether the plea would have otherwise been made. Caplinger, supra at 572,664 N.E.2d at 962; State v. Wilburn (Oct. 2, 1998), Lawrence App. No. 97CA53, unreported.
Applying these principles to the facts in the cause subjudice, we readily conclude that the court below substantially complied with the provisions of Crim.R. 11. We also find that appellant has not demonstrated the requisite prejudice necessary to reverse his conviction. First, we seriously doubt that the trial court's omission of a single word (i.e. the term "serious") from its explanation of the reduced charge of felonious assault under R.C. 2903.11(A)(1) had any real impact on appellant's decision to enter a guilty plea. Second, considering that appellant shot Brian Guinn through the neck with a 357 revolver, there can hardly be any serious contention that he did not understand the gun specification to mean an "operable" firearm as set forth in R.C. 2923.11(B)(1). More importantly, however, the transcript of the November 21, 1994 change of plea hearing reveals the following colloquy between the court, defense counsel and appellant:
 "Court: * * * The Court is never by law permitted to accept any plea of guilty from anyone except that there be a factual basis or background for it. * * * So, [defense counsel] has risen, I assume he's going to speak for you. You listen very carefully to see if you agree as to the factual circumstances involved in this case.
 [Defense counsel]: Your Honor, on January 2nd, 1994 in Manchester, in Adams County, Ohio, [appellant] entered in to the residence of a Brian [G]uinn who is also known as Brian Meeker . . . and when he entered the residence [he] had with him a 357 revolver and he entered the residence and pulled the revolver, pull the trigger on the revolver and caused serious physical harm to Brian Meeker which would be in complete violation of 2903.11(A)(1). This occurred in Adams County, Ohio, on January 2, 1994.
Court: I assume it wasn't any accident?
 [Defense counsel]: [Appellant] intended to pull the gun and pull the trigger, your Honor. And I would say for the purposes of gun specification, he would admit that the firearm he was carrying is a deadly weapon as defined in the statute.
 Court: Alright, [appellant], have you heard your attorney speak as to the factual issues?
[Appellant]: Yes, your Honor.
Court: Do you agree with them?
[Appellant]: Yes.
 Court: Do you wish to make any further explanation of them?
[Appellant]: No." (Emphasis added.)
This excerpt clearly demonstrates at least some degree of awareness on appellant's part that "serious" physical harm is an element of felonious assault. It would also indicate his awareness that the weapon used to perpetrate that assault met certain criteria necessary to satisfy the specification statute. Furthermore, by agreeing to this factual recitation given by his own counsel, appellant essentially admitted to the infliction of "serious" physical harm to Brian Guinn and that his 357 revolver was sufficient to sustain the "gun specification." This Court would therefore be hard pressed to find that appellant was prejudiced, or that his plea would have been otherwise, had a more detailed explanation of these statutes been given by the trial court. We thus conclude that appellant's guilty plea was knowingly and voluntarily given. His first assignment of error is without merit and is therefor overruled.
 II
Appellant's second and third assignments of error both go to the issue of "shock probation" which was raised in his App.R. 5(A) motion for delayed appeal. These two (2) assignments of error are substantively different from one another and will be addressed separately. Nevertheless, there are several points which both of them have in common. We will address those points here before turning to the merits of the individual assignments of error.
First, appellant pled guilty to a charge that carried a firearm specification. That specification required appellant to serve three (3) years of actual incarceration. See former R.C.2929.71(A)(2). He was therefore ineligible for "shock probation." See former R.C. 2951.02(F)(5); former R.C.2929.01(C); also see State v. Smith (1989), 42 Ohio St.3d 60,537 N.E.2d 198 at paragraph two of the syllabus. There is no dispute between the parties on this point.[4]
What is in dispute, however, is whether appellant believed that he would be eligible for such probation as an inducement for him to plead guilty. We find no direct indication that this was the case anywhere in the record. Indeed, from our own review of the transcripts of the proceedings below, we find no mention of "shock probation" whatsoever prior to appellant's post-judgment motion asking for such relief. The only material which at all substantiates his contentions to this effect is the affidavit he submitted in support of his motion for delayed appeal wherein appellant attested that his "court-appointed attorney told [him][he] was eligible for shock probation." Obviously, this affidavit cannot be considered by us because it is not a part of the record. See App.R. 9(A) (the record consists of the original papers filed in the trial court together with any transcripts of proceedings and a certified copy of the docket and journal entries); also see In reContested Election of November 2, 1993 (1995), 72 Ohio St.3d 411,413, 650 N.E.2d 859, 861; State v. Ishmail (1978), 54 Ohio St.2d 402, 377 N.E.2d 500 at paragraph one of the syllabus (reviewing courts cannot add material to the record). With this in mind, we turn our attention to appellant's remaining assignments of error.
 III
Appellant argues in his second assignment of error that the trial court improperly accepted his guilty plea when that plea was based on the erroneous belief that he would be eligible for shock probation. We find nothing in the record, however, to suggest that the trial court encouraged that belief. Moreover, the transcript of the November 21, 1994 change of plea hearing reveals that the trial court informed appellant (on no less than three (3) separate occasions) that he could not receive probation. The following excerpt from the transcript succinctly illustrates that point:
 "Court: I might also say to you that as I look at it with a gun spec, you would have to serve an actual three years, so there isn't going to be any probation possible and I don't know whether you would even qualify otherwise if there were [not] a gun spec involved, but with a gun spec you have to actually serve that, plus it has to be served prior to but consecutive to the other one, so we're talking about a consecutive and it has to be served prior to that. Do you understand that?
[Appellant]: Yes." (Emphasis added.)
Appellant counterargues in his brief that although the court informed him that he would not be eligible for regular probation, it never once expressly informed him that he would be ineligible for "shock probation." He contends that this amounts to reversible error. We are not persuaded. The provisions of Crim. R. 11 (C) (2) (a) require only that the trial court address the defendant and make sure he understands,inter alia, that he "is not eligible for probation . . ." (Emphasis added.) There is no requirement in the rule that the trial court also ensure that appellant is aware of ineligibility for "shock probation." See State v. Moody (Mar. 16, 1998), Pickaway App. No. 97CA13, unreported; State v.Crenshaw (Jun. 6, 1991), Cuyahoga App. No. 60329, unreported.
Appellant nevertheless cites us to the case of State v.Brigham (Feb. 27, 1997), Franklin App. Nos. 96APA07-964 
96APA07-970, unreported, wherein the Franklin County Court of Appeals reversed a conviction because the defendant therein did not understand that he was ineligible for shock probation. The facts in Brigham, however, are clearly distinguishable from this case because the defendant therein repeatedly questioned the court about such relief and was led to believe that he was eligible. In fact, as shown by the following portion of the opinion from that case, our colleagues on the Franklin County Court of Appeals came to roughly the same conclusion on this issue that we have reached here:
 "Crim.R. 11(C) does not require the trial court to discuss shock probation eligibility, nor does this court hold that, in every case, the trial court must advise a defendant that he is ineligible for shock probation. On a case by case basis, that may or may not be necessary. We merely hold that, where a defendant asks that specific question, the defendant is entitled to an accurate answer so he can make an intelligent waiver of his rights by entering a guilty plea.
* * *
 In short, we hold that, although Crim.R. 11(C)(2)(a) does not require discussion of shock probation eligibility, it does require that there be a full understanding of the consequences of entering the plea. Where the evidence shows that appellant was not properly advised when the question was asked, the plea was not made with the requisite understanding." (Citation omitted)
Again, appellant never once questioned the court below about shock probation. There is also nothing to suggest that he was ever encouraged in the mistaken belief that he was eligible for such release. The trial court was under no duty to expressly inform him that he was ineligible. For these reasons, we find no merit in the second assignment of error and it is accordingly overruled.
 IV
Appellant argues in his third assignment of error that he received ineffective assistance of trial counsel because his attorney erroneously advised him that he would be eligible for shock probation. We need not reach that issue here, however, as there is nothing to conclusively show that such advice was ever given.
It is true that a criminal defendant has a right to the assistance of counsel which includes the right to effective assistance of counsel. See McCann v. Richardson (1970),397 U.S. 759, 770 at fn. 14; State v. Doles (Sep. 18, 1991) Ross App. No. 1660, unreported at 11. The United States Supreme Court in Strickland v. Washington (1984), 466 U.S. 668, 687, developed the following two (2) pronged test for determining whether counsel's assistance was so defective as to require a reversal of the conviction:
 "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable."
The same standard is applied whenever a claim of ineffective assistance of counsel is raised in an Ohio court. See e.g.State v. Goodwin (1999), 84 Ohio St.3d 331, 334,703 N.E.2d 1251, 1256; State v. Otte (1996), 74 Ohio St.3d 555, 565,660 N.E.2d 711, 721; State v. Loza (1994), 71 Ohio St.3d 61, 83,641 N.E.2d 1082, 1105; State v. Watson (1991), 61 Ohio St.3d 1,12 — 13, 572 N.E.2d 97, 107.
Appellant fails to satisfy this test in the causesub judice because he cannot establish the first prong thereof (i.e. error on the part of his trial counsel). As mentioned above, there is nothing whatsoever in the record to expressly show that counsel ever advised him that he would be eligible for shock probation.
Appellant seems to acknowledge this deficiency in his argument and contends that this Court should, instead, assume that such advice was given. His contention is based on the fact that trial counsel "actually filed a motion for shock probation on [appellant's] behalf some thirty-five days after execution of sentence." We are not persuaded. All this action shows is that trial counsel was, himself, under the belief that appellant was eligible for shock probation. It does not prove that counsel ever imparted that belief to his client or advised him to that effect. This Court has repeatedly held, with respect to the second prong of the Strickland test, that we will not imply prejudice from counsel's errors, but will require that it be affirmatively shown. See e.g. State v. Kuntz
(Feb. 26, 1992), Ross App. No. 1691, unreported at 7; State v.Penix (Oct. 22, 1991), Scioto App. No. 90CA1887, unreported at 8; State v. Adams (Apr. 6, 1991), Washington App. No. 90CA5, unreported at 7; State v. Maughmer (Feb. 7, 1991), Ross App. No. 1667, unreported at 5. Likewise, we hold that the error itself must also be affirmatively shown. This Court will not simply imply or presume that it took place. Absent any express proof that appellant's trial counsel gave appellant erroneous advice, this Court cannot conclude that he received ineffective assistance from counsel. His third assignment of error is therefore without merit and is overruled.
Having reviewed all errors assigned and argued in the briefs, and finding merit in none of them, the judgment of the trial court is hereby affirmed.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Adams County Common Pleas Court to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court. The stay as herein continued will terminate at the expiration of the sixty day period.
The stay will also terminate if appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Harsha, J.: Concurs in Judgment Opinion as to Assignment of Error I II and Concurs in Judgment Only as to Assignment of Error III; Kline, J.: Concurs in Judgment Opinion
For the Court
 BY: ___________________________ Peter B. Abele, Judge
 NOTICE TO COUNSEL
Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.
[2] The victim, Brian Guinn, is also referred to as Brian Quinn and Brian Meeker at different points in the record.
[3] It was also agreed that the State would dismiss an aggravated burglary charge against appellant in another case in exchange for this plea.
[4] These statutory provisions were all subsequently repealed or amended with passage of Am.S.B. No. 2 in 1995. See 146 Ohio Laws, Part IV, 7136. This case obviously pre-dates those changes and, thus, the laws in existence at that time are applicable here.